ROBERT EARL DALTON d/b/a B. DALTON & COMPANY, Plaintiff v. DAVID CAMP, NANCY J. MENIUS, and MILLENNIUM COMMUNICATION CONCEPTS, INC., Defendants

No. COA98-1330-2

(Filed 6 June 2000)

## 1. Employer and Employee— breach of loyalty—forming rival company

The trial court correctly granted summary judgment for defendant Menius but erred by granting summary judgment for defendant Camp on a breach of loyalty claim arising from defendants leaving plaintiff's employment and starting a rival company. Menius's activities while employed by plaintiff may be best described as mere preparations to compete, which is not a breach of the duty of loyalty; however, it appears from plaintiff's forecast of the evidence that defendant Camp went beyond merely preparing to compete.

## 2. Unfair Trade Practices— employee founding rival business—deceptive use of position of confidence

The trial court erred by granting summary judgment for defendant Camp on an unfair and deceptive trade practices claim

DALTON v. CAMP

[138 N.C. App. 201 (2000)]

arising from defendants leaving plaintiff's employment and start-
ing a rival business where plaintiff presented evidence that
defendant Camp deceptively used a position of confidence to
solicit the plaintiff's customers and compete with plaintiff while
still in his employment, concealing his behavior from plaintiff.
Under *Sara Lee Corp. v. Carter*, 351 N.C. 27, a defendant's
employee status cannot shield the defendant from liability under
Chapt. 75. The solicitation and procurement of commercial con-
tracts comprise business activities "in or affecting commerce."

**3. Unfair Trade Practices— employee founding rival busi-
ness—conduct after leaving plaintiff's employment**

The trial court correctly granted summary judgment for
defendant Menius on an unfair and deceptive trade practice claim
arising from defendants leaving plaintiff's employment and start-
ing a rival business. Plaintiff showed that Menius formed a com-
peting business, obtained financing for that business, and began
to solicit plaintiff's clients after she left plaintiff's employment,
conduct that does not amount to an unfair and deceptive trade
practice on the facts presented.

**4. Unfair Trade Practices— solicitation of rival's business—
deceptive—employment relationship not a bar**

The trial court erred by awarding summary judgment to
defendant Millennium Communications Concepts, Inc. (MCC) on
an unfair and deceptive trade practices claim arising from defend-
ants Camp and Menius leaving plaintiff's employment and found-
ing MCC. According to plaintiff's forecast of evidence, MCC acted
through Camp in deceptively soliciting plaintiff's business. In
light of *Sara Lee Corp. v. Carter*, 351 N.C. 27, Camp's employ-
ment relationship is no longer a bar to plaintiff's unfair and
deceptive trade practice claim.

**5. Appeal and Error— preservation of issues—appeal from
order**

Plaintiff preserved for appeal the issue of whether summary
judgment was properly granted on a claim for interference with
prospective advantage arising from two of plaintiff's employees
leaving and starting a rival business where plaintiff failed to
appeal from a ruling by one judge on a motion to dismiss inter-
ference with contractual and business relations claims, but did
appeal from an order from another judge regarding the claim for
interference with prospective advantage.

DALTON v. CAMP

[138 N.C. App. 201 (2000)]

## 6. Wrongful Interference— interference with prospective advantage—employees founding rival business—continuing relationship—summary judgment

The trial court erroneously granted summary judgment for defendants on a claim for tortious interference with prospective advantage arising from defendants leaving plaintiff's employment and starting a rival business publishing employment magazines. Plaintiff presented a genuine issue of material fact as to whether the continuing relationship between a customer (KFI) and plaintiff would have persisted and whether defendant Camp's actions induced KFI to refrain from renewing its contract.

## 7. Wrongful Interference— interference with prospective advantage—employees founding rival business—right to compete

The trial court improperly granted summary judgment for defendant Camp but properly granted summary judgment for defendant Menius on a claim for interference with prospective advantage arising from defendants leaving plaintiff's employment to start a rival business. The argument that Camp had an unqualified right to compete ignores Camp's ongoing duty to plaintiff as general manager of plaintiff's company. Menius could freely compete because she did not act adversely to plaintiff's interests until after she left his employment.

## 8. Wrongful Interference— interference with prospective advantage—employees founding rival business—deceptive use of confidential relationship by business

The trial court erred by granting summary judgment for defendant MCC on a claim for interference with prospective advantage in an action arising from defendants Camp and Menius leaving plaintiff's employment and starting a rival business (MCC). Based on plaintiff's evidence, defendant MCC, acting through Camp, used a confidential relationship deceptively to entice plaintiff's customers away from plaintiff.

## 9. Conspiracy— civil—employees founding rival business

The trial court properly entered summary judgment for defendants on a civil conspiracy claim arising from defendants Camp and Menius leaving plaintiff's employment to start a rival business. Although there is no cause of action for civil conspiracy per se, an action does exist for wrongful acts committed by persons pursuant to a conspiracy. Here, plaintiff did not forecast evidence to support allegations of a common agreement and objective.

**10. Damages— employees founding rival business—evidence not speculative**

A plaintiff in an action which arose from employees beginning a rival business presented sufficient evidence of damages to survive a motion for summary judgment where an expert testified as to losses suffered as a result of defendant's conduct, basing her conclusion on revenues earned prior to the conduct of defendants and on evidence of anticipated revenues from the parties' tax returns and accounts receivable summaries. This evidence was not overly speculative.

On remand by order of the Supreme Court of North Carolina filed 16 February 2000 to reconsider the unanimous decision of the Court of Appeals, *Dalton v. Camp,* 135 N.C. App. 32, 519 S.E.2d 82 (1999) in light of the decision of the North Carolina Supreme Court in *Sara Lee Corp. v. Carter,* 351 N.C. 27, 519 S.E.2d 308, *reh'g denied,* 351 N.C. 191, —— S.E.2d —— (1999). Appeal by plaintiff from judgment entered 13 July 1998 by Judge H.W. Zimmerman, Jr. in Randolph County Superior Court. Originally heard in the Court of Appeals 16 August 1999. Heard on remand 17 April 2000.

*Murchison, Taylor & Gibson, L.L.P., by Andrew K. McVey and Moser, Schmidly, Mason & Roose, by Stephen S. Schmidly for plaintiff-appellant.*

*Wyatt Early Harris & Wheeler, L.L.P., by William E. Wheeler for defendant-appellees.*

EAGLES, Chief Judge.

This appeal arises out of a former employer's allegations of unfair competitive activity by employees and their new corporation. The Supreme Court has remanded this case for reconsideration in light of *Sara Lee Corp. v. Carter,* 351 N.C. 27, 519 S.E.2d 308 (1999). This opinion supercedes our earlier opinion reported at 135 N.C. App. 32, 519 S.E.2d 82 (1999) which is withdrawn.

Plaintiff Robert Earl Dalton d/b/a B. Dalton & Company engages in the business of selling advertisements and publishing employment magazines. In July of 1993, plaintiff obtained the rights to publish the employment magazine for Klaussner Furniture Industries, Inc. (KFI) for a three-year period. The agreement called for Klaussner to pay all print charges of $3,575.00 per issue. Plaintiff then hired defendant David Camp as his General Manager. Plaintiff gave Camp full respon-

sibility for the KFI publication. Plaintiff later acquired rights to publish several other employee magazines and gave full responsibility to Camp for those publications. Camp alleges that at the time of his initial employment, plaintiff promised that he would offer Camp an ownership interest in the company in the near future. In December of 1995, plaintiff hired defendant Nancy Menius. Both defendants were at-will employees and neither had "a covenant not to compete" with plaintiff.

In March of 1994, plaintiff published the first issue of KFI's magazine *Inside Klaussner*. Plaintiff continued to produce the magazine over the next three years. KFI officials expressed satisfaction with the plaintiff's efforts.

On or about 15 January 1997, plaintiff and both defendant Menius and Camp entered discussions with KFI officials about renewing the publication agreement. Among the topics discussed was a price reduction that KFI expected to receive from plaintiff. Plaintiff said he would "get back to" KFI. Plaintiff alleges that the parties left this meeting with an understanding that the current publishing relationship would continue. Immediately following the meeting, Camp engaged in the first of a series of discussions with KFI's representative, Mark Walker. Plaintiff alleges that many of these discussions took place while Camp was at KFI's place of business in connection with his duties as plaintiff's general manager. Defendants respond that Walker initiated each conversation and that Camp never pressured Walker to do business with him.

In February 1997, plaintiff alleges Menius engaged in several conversations with her fellow employee, Camp, about forming a competing company. Defendants claim that no "serious" conversations took place until after defendant Menius resigned on 28 February 1997. Following her resignation, both defendants prepared a business plan for defendant Millennium Communication Concepts, Inc. (MCC). In March 1997, defendants submitted their business plan to a lending institution and represented Camp to be a former employee of plaintiff. On 13 March 1997, Menius incorporated MCC with defendants being the sole officers, directors, and shareholders. Also in March, MCC entered into a written publishing contract with KFI. This contract gave MCC the exclusive right to publish *Inside Klaussner* for twenty months beginning in May 1997. The contract called for KFI to pay the printing costs of $3,245.00 per month and to pay all production costs of $1,227.00 per month. Camp signed the contract on behalf of MCC while still employed by plaintiff. On 26 March 1997, Camp

DALTON v. CAMP

[138 N.C. App. 201 (2000)]

resigned from plaintiff's employment and informed plaintiff of his activities. Subsequently, MCC obtained the business of several of plaintiff's other customers.

Plaintiff sued Camp, Menius, and MCC alleging breach of the fiduciary duty of loyalty, conspiracy to appropriate customers, tortious interference with contract, interference with prospective advantage and unfair and deceptive trade practices under Chapter 75. Judge Peter M. McHugh dismissed plaintiff's claim for tortious interference with contractual and business relations on 12 September 1997. Prior to trial on the remaining claims Judge H.W. Zimmerman, Jr. granted defendants' motion for summary judgment on 13 July 1998. Plaintiff appeals from the order granting summary judgment only.

Plaintiff contends that the trial court erred in granting summary judgment, arguing that there were genuine issues of material fact concerning defendants' actions. Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C.R. Civ. P. 56(c); *Toole v. State Farm Mut. Auto. Ins. Co.*, 127 N.C. App. 291, 294, 488 S.E.2d 833, 835 (1997). All of the evidence is viewed in the light most favorable to the nonmoving party. *Coats v. Jones*, 63 N.C. App. 151, 303 S.E.2d 655 (1983), *aff'd*, 309 N.C. 815, 309 S.E.2d 253 (1983). The movant bears the burden of proving the absence of any genuine issue of material fact. *Holley v. Burroughs Wellcome Co.*, 318 N.C. 352, 348 S.E.2d 772 (1986).

I. Breach of the Duty of Loyalty

[1] We first consider plaintiff's claims for breach of the duty of loyalty. One may create a confidential or fiduciary relationship with another by instilling a special confidence in him. *See Speck v. N.C. Dairy Foundation*, 311 N.C. 679, 685, 319 S.E.2d 139, 143 (1984) (*citing Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)). The existence of such a relationship binds the individual to act with good faith and loyalty towards the one instilling confidence. *Id; Sara Lee Corp. v. Carter*, 129 N.C. App. 464, 470, 500 S.E.2d 732, 736 (1998), *rev'd on other grounds*, 351 N.C. 27, 519 S.E.2d 308 (1999). An employee must faithfully serve his employer and perform his duties with reasonable diligence, care, and attention. *McKnight v. Simpson's Beauty Supply, Inc.*, 86 N.C. App. 451, 453, 358 S.E.2d 107, 109 (1987). Where an employee deliberately acquires an interest

**DALTON v. CAMP**

[138 N.C. App. 201 (2000)]

adverse to his employer, he is disloyal. *In Re Burris*, 263 N.C. 793, 795, 140 S.E.2d 408, 410 (1965).

Plaintiff claims that summary judgment is inappropriate because there is a genuine issue of material fact as to whether Camp breached his duty of loyalty. We agree. Plaintiff placed Camp in the position of General Manager and gave him sole responsibility over plaintiff's publications. The evidence shows that defendant Camp was responsible for editing, designing, and publishing plaintiff's magazines. Additionally, defendant Camp handled the payroll, checkbook, and accounts dealing with the plaintiff's publications. His responsibilities necessarily included some "one on one" contact with customers including monthly contacts with KFI's representatives. Plaintiff argues that by this pattern of dealing he instilled special confidence in Camp. Accordingly, plaintiff contends that Camp was required to be loyal to plaintiff.

Plaintiff presented evidence that defendant Camp began discussions with Mark Walker of KFI, while still plaintiff's employee. Those conversations all occurred while Camp was on official business for plaintiff. In those discussions, Camp expressed dissatisfaction with the plaintiff and raised the possibility of forming his own company. Walker and Camp also considered the possibility of Camp publishing KFI's magazine. The talks culminated in the signing of an exclusive publication agreement between Camp and KFI. This signing took place before Camp left plaintiff's employment. Camp did not disclose to plaintiff his adverse activities prior to resigning his employment. Menius and Camp went to talk with another of plaintiff's customers, Acme-McCrary, while plaintiff still employed Camp. Menius admitted that she and Camp solicited Acme-McCrary's business.

Defendants argue that *Fletcher, Barnhardt & White, Inc. v. Matthews*, 100 N.C. App. 436, 397 S.E.2d 81 (1990), *disc. review denied*, 328 N.C. 89, 402 S.E.2d 411 (1991) controls here. However, *Fletcher* dealt with the situation where the employee had merely prepared to compete with his employer. *Id.* at 441, 397 S.E.2d at 84. This Court stated that merely forming a company is not enough to find a breach of a fiduciary duty. *Id.* From plaintiff's forecast of the evidence, it appears that Camp's actions went beyond merely forming a company. Therefore, plaintiff has presented a genuine issue of material fact as to whether Camp went beyond merely preparing to compete. If Camp, while he was plaintiff's employee, was actually competing without plaintiff's consent, then he has breached his duty of loyalty. *See Long v. Vertical Technologies, Inc.*, 113 N.C. App. 598,

439 S.E.2d 797(1994); *In re Burris*, 263 N.C. at 795, 140 S.E.2d at 410. Therefore, summary judgment was improper.

Plaintiff argues that he has presented a genuine issue of material fact as to whether Menius breached her duty of loyalty. We disagree. At the most, plaintiff has shown that Menius discussed forming a new company with Camp while plaintiff employed her. There was no showing that Menius talked with Walker one on one prior to her leaving plaintiff's employment nor any showing that she was bound by a covenant not to compete. Plaintiff acknowledges that Menius engaged in most of her questioned conduct after she left plaintiff's employment. Menius's activities while employed by plaintiff may be best described as mere preparations to compete. Merely preparing to compete is not a breach of the duty of loyalty. *See Fletcher*, 100 N.C. App. at 441-42, 397 S.E.2d at 84. Therefore, summary judgment was proper as to Menius.

II.  Chapter 75 Unfair and Deceptive Trade Practices

[2]  Plaintiff argues that he has presented a genuine question of material fact as to defendants' unfair and deceptive trade practices. We agree. Chapter 75 of the North Carolina General Statutes establishes a cause of action for unfair methods of competition or unfair or deceptive acts in or affecting commerce. N.C.G.S. § 75-1.1 (1999). Chapter 75 protects businesses as well as consumers. *McDonald v. Scarboro*, 91 N.C. App. 13, 18, 370 S.E.2d 680, 683, *disc. review denied*, 323 N.C. 476, 373 S.E.2d 864 (1988). Until recently, our Courts have held that the Unfair and Deceptive Trade Practices Act did not cover claims arising out of employer-employee relations. However, our Supreme Court has now dispelled that notion. *Sara Lee Corp. v. Carter*, 351 N.C. 27, 519 S.E.2d 308 (1999).

The defendant in *Sara Lee* worked as a "Information Center Service Administrator" in Sara Lee's products division. *Sara Lee Corp.*, 351 N.C. at 29, 519 S.E.2d at 309. Defendant's job entailed the development and maintenance of vendor relationships to provide Sara Lee with the best pricing, availability and hardware support. *Id.* While employed, defendant developed four separate businesses through which he engaged in self-dealing by supplying Sara Lee with computer parts at an excessive cost. *Id.* Sara Lee brought suit alleging unfair and deceptive trade practices. *Id.* at 30, 519 S.E.2d at 310.

On appeal this Court held that the plaintiff could not hold the defendant liable for unfair and deceptive trade practices because the

claim arose out of an employment relationship. *Sara Lee Corp. v. Carter*, 129 N.C. App. 464, 500 S.E.2d 732 (1998), *rev'd on other grounds, Sara Lee Corp. v. Carter*, 351 N.C. 27, 508 S.E.2d 308 (1999). The Supreme Court reversed, reasoning that a defendant's employee status cannot shield the defendant from liability under Chapter 75. *Sara Lee Corp.*, 351 N.C. at 34, 519 S.E.2d at 312. In contrast to previous Court of Appeals decisions, the Supreme Court stated that a defendant may be liable under Chapter 75 despite his employment relationship with the plaintiff. *Id.* So long as the defendant has engaged in unfair and deceptive conduct, in or affecting commerce, to the plaintiff's detriment, the parties' employment relationship is irrelevant.

In *Dalton I*, we held that Chapter 75 does not cover claims that arise out of employer-employee relationships. Accordingly, we upheld the trial court's grant of summary judgment for defendant Camp. *Dalton*, 132 N.C. App. at 39, 519 S.E.2d at 87. We reasoned that the plaintiff's potential Chapter 75 action arose out of the parties' employment relationship. *Id.* In light of *Sara Lee*, we must reconsider whether the plaintiff has presented a genuine issue of material fact as to his Chapter 75 claim.

In order for plaintiff to prevail on a claim for unfair and deceptive trade practices, plaintiff must demonstrate the existence of three factors: "(1) an unfair or deceptive act or practice, or unfair method of competition, (2) in or affecting commerce, and (3) which proximately caused actual injury to the plaintiff or his business." *Murray v. Nationwide Mutual Ins. Co.*, 123 N.C. App. 1, 9, 472 S.E.2d 358, 362 (1996), *disc. review denied*, 345 N.C. 344, 483 S.E.2d 173 (1997) (citation omitted). Viewing the evidence in the light most favorable to the nonmoving party, the plaintiff has demonstrated a genuine issue of material fact as to its Chapter 75 claim.

A practice is unfair when "it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Edwards v. West*, 128 N.C. App. 570, 574, 495 S.E.2d 920, 924 (1998) (citation omitted). A trade practice is deceptive if it "has the capacity or tendency to deceive." *Id.* However, the plaintiff does not have to show deliberate acts of deceit or bad faith. *Id.* Here, plaintiff has presented evidence that defendant Camp deceptively used a position of confidence to solicit the plaintiff's customers and compete with the plaintiff while still in his employment. Further, defendant Camp concealed his behavior from the plaintiff. If proved, these acts would amount to unfair and deceptive trade practices.

DALTON v. CAMP

[138 N.C. App. 201 (2000)]

Next we must decide whether defendant Camp's activities were "in or affecting commerce." N.C.G.S. § 75-1.1(b) provides that "for purposes of this section, commerce includes all business activities however denominated." *See Sara Lee Corp.*, 351 N.C. at 32, 519 S.E.2d at 311. Further, our Supreme Court has explained that "business activities is a term that connotes the manner in which businesses conduct their regular, day-to-day activities, or affairs such as the purchase and sale of goods or whatever other activities the business regularly engages in and for which it is organized." *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 594, 403 S.E.2d 483, 493 (1991). Here, the plaintiff's evidence shows that defendant Camp solicited plaintiff's customers and obtained their business. Camp conducted these transactions while on official business for the plaintiff. The solicitation and procurement of commercial contracts comprise business activities within the statutory definition. Based on this evidence, we hold that the conduct in question was "in or affecting commerce" and thus falls within the scope of Chapter 75.

Additionally, defendants claim that the plaintiff has not presented a genuine issue as to plaintiff's actual injury. In Section V of this opinion, we address the defendants' claim that plaintiff has failed to show any damages. We now adopt that reasoning here and hold that the plaintiff has presented a genuine issue of material fact as to his "actual injury" here. Accordingly, the trial court's grant of summary judgment for defendant Camp was error and we now reverse that ruling.

[3] We next consider the unfair and deceptive trade practice claim as to Menius. Here, we conclude that summary judgment was proper as to Menius. Whether a practice is unfair or deceptive depends on the facts of each case and the impact on the marketplace. *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). Here, plaintiff has shown that Menius formed a competing business, obtained financing for that business, and began to solicit plaintiff's clients after she left plaintiff's employment. We hold that this conduct does not amount to unfair and deceptive trade practices on the facts presented.

[4] Next, we must consider whether *Sara Lee* alters our holding as to defendant MCC. In *Dalton I*, we held that "MCC acted solely through Menius and Camp. Because the actions of Menius and Camp may not constitute an unfair and deceptive trade practice under the laws of this state, we conclude that MCC was also not liable." In light of *Sara Lee*, we modify that decision. Under *Sara lee*, a claim for unfair and

DALTON v. CAMP

[138 N.C. App. 201 (2000)]

deceptive trade practices now lies even though the claim arose out of an employer/employee relationship. As discussed above, defendant Camp's employment relationship is no longer a bar to the plaintiff's unfair and deceptive trade practice claim. Since the Supreme Court has removed that limitation, plaintiff now has a claim against defendant MCC for unfair and deceptive trade practices. According to the plaintiff's forecast of evidence, defendant MCC acted through its agent defendant Camp in deceptively soliciting away the plaintiff's business. By using Camp in this fashion, defendant MCC may now be found liable to the plaintiff under Chapter 75. Thus, the trial court also erred in awarding summary judgment to defendant MCC on plaintiff's Chapter 75 claim.

III. Interference With Prospective Advantage

**[5]** Defendants argue that plaintiff has failed to preserve this issue for appeal. This argument has no merit. On 12 September 1997, Judge Peter McHugh dismissed plaintiff's claim that sought damages for interference with contractual and business relations with KFI. However, Judge McHugh denied defendants' motion to dismiss as to the plaintiff's claim for interference with prospective advantage as to KFI. Judge H.W. Zimmerman, Jr. later granted defendants' motion for summary judgment which included plaintiff's claim for prospective advantage. While plaintiff failed to appeal from Judge McHugh's ruling on the motion to dismiss the interference with contractual and business relations claim, plaintiff did appeal from Judge Zimmerman's order regarding his claim for interference with prospective advantage. Accordingly, we hold that plaintiff has preserved this issue.

**[6]** In order to maintain an action for tortious interference with prospective advantage, plaintiff must show that defendants induced KFI to refrain from entering into a contract with plaintiff without justification. Additionally, plaintiff must show that the contract would have ensued but for defendants' interference. *Cameron v. New Hanover Memorial Hospital*, 58 N.C. App. 414, 440, 293 S.E.2d 901, 917, *disc. review denied*, 307 N.C. 127, 297 S.E.2d 399 (1982). Defendants must not be acting in the legitimate exercise of their own right, "but with a design to injure the plaintiff or gain some advantage at his expense." *Owens v. Pepsi Cola Bottling Co. of Hickory, N.C., Inc.*, 330 N.C. 666, 680, 412 S.E.2d 636, 644 (1992).

Here the depositions and pleadings have shown that KFI had a positive reaction to plaintiff's efforts with KFI's magazine. In his

deposition, Walker testified that KFI had no complaints or problems with either the publication, quality, or distribution of *Inside Klaussner* during the time that plaintiff produced it. Plaintiff has presented evidence showing that all parties left the 15 January 1998 meeting with the understanding that plaintiff would continue with the production of KFI's magazine. Additionally, there is no question that plaintiff continued to produce KFI's magazine beyond the terms of the original contract. Clearly, plaintiff has presented a genuine issue of material fact as to whether the continuing relationship between KFI and plaintiff would have persisted and whether Camp's actions induced KFI to refrain from renewing its contract.

[7] The final issue is whether the defendants were justified in their actions as a matter of law. Defendants allege that Camp had an unqualified right to compete and therefore he could solicit business away from plaintiff. This argument impermissibly ignores Camp's ongoing duty to plaintiff as the general manager of plaintiff's company. *See McKnight*, 86 N.C. App. at 453, 358 S.E.2d at 109; *Sara Lee Corp.*, 129 N.C. App. at 470, 500 S.E.2d at 736.

For an employee in a confidential relationship to compete with an employer without consent constitutes a breach of the duty of loyalty. *See Long*, 113 N.C. App. at 604, 439 S.E.2d at 802. When one deliberately acquires an interest adverse to his employer, he has breached his duty of loyalty as well. *Id.* If, as plaintiff alleges, Camp competed while still employed by plaintiff, then Camp was not acting in the legitimate exercise of his own rights. *See Owens*, 330 N.C. at 680, 412 S.E.2d at 644. Rather, Camp acted to gain an advantage for himself at the plaintiff's expense. *Id.* We have already ruled that there is a genuine issue as to whether Camp was competing or merely preparing to compete against plaintiff. Therefore, summary judgment was improper as to plaintiffs interference with prospective advantage claim against Camp as well.

As to Menius, we hold that the trial court properly granted summary judgment. Plaintiff has presented no evidence that Menius solicited any of plaintiff's business while plaintiff employed her. Additionally, there is no evidence that a covenant not to compete covered Menius. At most, plaintiff showed that Menius prepared to compete prior to leaving plaintiff's employment. *See Fletcher, Barnhardt & White, Inc. v. Matthews*, 100 N.C. App. 436, 397 S.E.2d 81 (1990). Since Menius did not act adversely to plaintiff's interests until after she left his employment, she could freely compete with him. *See Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 222-23, 367 S.E.2d

647, 652 (1988); *Childress v. Ableles*, 240 N.C. 667, 84 S.E.2d 176 (1954). Therefore, summary judgment was proper.

[8] We also take this opportunity to reconsider our holding as to plaintiff's claim against defendant MCC. In *Dalton I*, we held that the trial court correctly granted summary judgment as to defendant MCC. *Id.* at 41, 519 S.E.2d at 87-88. We reasoned that defendant MCC "was never more than a competitor of plaintiff" and could freely solicit plaintiff's customers without penalty. *Id.* As long as a competitor solicits legally and does not gain an unfair advantage at the other's expense, it may seek to induce another party not to renew or enter a contract. *Owens*, 330 N.C. at 680, 412 S.E.2d at 644. Based on the plaintiff's evidence, defendant MCC acting through defendant Camp used a confidential relationship deceptively to entice plaintiff's customers away from the plaintiff. Defendant MCC sought to negotiate a contract with plaintiff's customers with the active participation of plaintiff's own employees. All the while, plaintiff had no knowledge of its employee Camp's actions. This deceptive conduct allowed MCC to gain an unfair advantage at the plaintiff's expense. Accordingly, we now reverse the trial court's grant of summary judgment as to defendant MCC and reinstate plaintiff's claim for prospective advantage against MCC.

IV. Conspiracy

[9] Plaintiff next alleges that he has presented sufficient evidence to overcome the motion for summary judgment as to his conspiracy claim. We disagree as to all three defendants.

There is no cause of action for civil conspiracy per se. *Dickens v. Puryear*, 302 N.C. 437, 456, 276 S.E.2d 325, 337 (1981); *Henderson v. LeBauer*, 101 N.C. App. 255, 260-61, 399 S.E.2d 142, 145, *disc. review denied*, 328 N.C. 731, 404 S.E.2d 868 (1991). However, an action does exist for wrongful acts committed by persons pursuant to a conspiracy. *Id.* This claim requires the showing of an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way that results in damages to the claimant. *Id.* Additionally, the claimant must present evidence of an "overt act" committed by at least one conspirator committed in furtherance of the conspiracy. *Dickens*, 302 N.C. at 456, 276 S.E.2d at 337. If a party makes this showing, all of the conspirators are jointly and severally liable for the act of any one of them done in furtherance of the agreement. *Fox v. Wilson*, 85 N.C. App. 292, 301, 354 S.E.2d 737, 743 (1987).

A party may prove an action for civil conspiracy by circumstantial evidence; however, sufficient evidence of the agreement must exist "to create more than a suspicion or conjecture in order to justify submission of the issue to a jury." *Dickens*, 302 N.C. at 456, 276 S.E.2d at 337. After careful examination of the record before us, we conclude that plaintiff has not forecast sufficient evidence to present a genuine question of material fact as to conspiracy. Here plaintiff relies on mere conjecture and has shown no facts sufficient to support their allegations of a common agreement and objective. At his deposition, plaintiff testified that he had no evidence that Menius and Camp conspired with one another. He stated that he had nothing more than "suspicion." Accordingly, the trial court properly entered summary judgment for the defendants.

V. Damages

**[10]** Defendants argue that plaintiff has not forecast evidence of a genuine issue as to his damages. In order to recover, plaintiff must show that the amount of damages is based upon a standard that will allow the finder of fact to calculate the damages with a reasonable certainty. *Olivetti Corp. v. Ames Business Systems, Inc.*, 319 N.C. 534, 546, 356 S.E.2d 578, 586, *reh'g denied*, 320 N.C. 639, 360 S.E.2d 92 (1987). Where a party has alleged business losses caused by intentional tortious conduct, the appropriate inquiry is whether the consequences were the natural and probable result of the defendants' conduct and not whether the consequences were within the parties' legal contemplation. *Steffan v. Meiselman*, 223 N.C. 154, 159, 25 S.E.2d 626, 629 (1943). As long as the evidence is not remote or speculative, evidence of anticipated profits is admissible to aid the jury in estimating the extent of the injury sustained and not as the measure of damages. *See id.* at 159, 25 S.E.2d at 629-30. Parties may show damages by proving the usual profits of a regularly established business prior to the tortious conduct. *Id.*

Taking all inferences in favor of the nonmoving party, we conclude that the plaintiff has presented sufficient evidence of damages to survive a motion for summary judgment. Plaintiff's expert witness testified that plaintiff had suffered from eighty five to ninety thousand dollars in losses as the result of defendants' conduct. She based this conclusion on revenues earned by plaintiff prior to the conduct of defendants and on evidence of anticipated revenues from the parties' tax returns and accounts receivable summaries. We conclude that this evidence is not overly speculative and is sufficient to withstand a motion for summary judgment. *See id.*

We now withdraw our earlier opinion in this action found at *Dalton v. Camp*, 135 N.C. App. 32, 519 S.E.2d 82 (1999).

Affirmed in part, reversed in part and remanded for trial.

Judges WALKER and McGEE concur.