IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-533

Filed: 19 March 2019

Brunswick County, No. 11 CVS 449

BDM INVESTMENTS, Plaintiff,

v.

LENHIL, INC., LENNON HILLS, L.L.C., JUDITH HOLLINGSWORTH, in her official capacity as EXECUTRIX of the ESTATE OF GLENN HOLLINGSWORTH; EDWIN L. BURNETT, III; VIABLE CORP.; GARY LAWRENCE; KEITH MYERS; MEYERS APPRAISAL SERVICES, L.L.C.; and DANIEL HILLA, III, Defendants.

Appeal by Plaintiff-Appellant from Orders entered 18 January 2012, 20 March 2014, 21 July 2014, and 16 November 2017 by Judge James L. Gale, Chief Special Superior Court Judge for Complex Business Cases, in Superior Court, Brunswick County. Heard in the Court of Appeals 14 November 2018.

*King Law Firm, by Kenneth W. King, Jr., plaintiff-appellant.*

*The Law Offices of Oliver & Cheek, LLC, by George M. Oliver & Ciara L. Rogers, for Edwin L. Burnett, III, Daniel Hilla, Lenhil, Inc., Lennon Hills, L.L.C., and Viable Corp., defendants-appellees.*

*Cranfill Sumner & Hartzog, LLP, by Carl Newman and Richard T. Boyette, for Gary Lawrence, defendant-appellee.*

*Ennis, Baynard, Morton, Medlin & Brown, P.A., by Maynard M. Brown and B. Danforth Morton, for Martin J. Evans and Homeplace Realty Associates, Inc., defendants-appellees.*

HUNTER, JR., ROBERT N., Judge.

Plaintiff-Appellant appeals from Orders entered 18 January 2012, 20 March 2014, 21 July 2014, and 16 November 2017 in which Judge James L. Gale, Chief Special Superior Court Judge for Complex Business Cases, in Superior Court, Brunswick County, granted Defendants' motions to dismiss and motions for summary judgment and dismissed the case. We affirm.

## I. Factual Background and Procedural History

A. Factual Background

The Record shows the following facts. Plaintiff-Appellant BDM Investments Inc. ("Plaintiff" or "BDM") is a general partnership, engaged exclusively in purchasing and holding real estate. Plaintiff's managing partner, Kenneth W. King, Jr. ("King"), and its two other partners, Leah L. King and Richard A. Mu, are licensed attorneys.[1] Plaintiffs purchased undeveloped land on 1 March 2007 and subsequently lost their investment and projected profits.

Since the early 1990s, Glenn Hollingsworth ("Hollingsworth") served as King's personal and business financial agent and advisor, preparing King's tax returns and

---

[1] In the initial and two amended Complaints, and in all related filings up to and including the trial court's 18 January 2012 order, "Plaintiffs" or "plaintiffs" included BDM Investments, Kenneth W. King, Jr., Leah L. King, and Richard A. Mu. The trial court also referred to the Kings and Mu as "Individual Plaintiffs." The trial court's 18 January 2012 order granted Defendants' motion to dismiss Individual Plaintiffs, explaining they lacked standing to pursue individual claims because they failed to allege an injury separate and distinct from that suffered by BDM. The issue of standing of individual plaintiffs is not on appeal. Subsequently, BDM remains as the sole plaintiff. We refer to BDM as "Plaintiff," but may reference "plaintiffs" when explaining or quoting historical facts and procedure.

"occupy[ing] a position of close personal trust" with King. In 2001, Hollingsworth also began providing personal and business financial advice to Leah King.

In or around 2004, Hollingsworth informed King he had sold his accounting business and acquired a provisional real estate license. Hollingsworth's provisional real estate license required supervision by Martin J. Evans/Homeplace Realty Associates, Inc. ("Evans/Homplace").[2] At the same time, Hollingsworth intended to continue serving certain clients by including them in favorable investment opportunities. Based on their relationship of trust and confidence, King "believed that [Hollingsworth] would be acting in King's best interests in all respects related to matters of a personal and business financial nature."

In 2006, Hollingsworth contacted King regarding an "'unbelievable opportunity'" to invest in land in the Lennon Hills subdivision in Brunswick County. Defendants Lenhil, Inc. and Lennon Hills L.L.C. developed and sold the Lennon Hills Lots. Hollingsworth told King that plaintiffs could buy ten undeveloped lots in the subdivision for $850,000 with a ten percent down payment. After plaintiffs held the lots for one year, during which time the developer would pay the interest on the loan for the land, they could then sell the lots back to the developer for a profit.

---

[2] Plaintiff-Appellants' Second Amended Complaint identifies as defendants "Exit Realty 1st, LLC, Exit Realty & Associates, Inc., Exit Realty Seaside, L.L.C., and Homeplace Realty Associates, Inc. (collectively referred to as "Exit Realty[.]") It also refers to "defendant J. Martin Evans" as the "qualifying broker employed with, and acting for, the Exit Realty defendants[.]" Listed as defendants in the case, however, are Martin J. Evans and Homeplace Realty Associates, Inc., to which we refer collectively as "Evans/Homeplace."

Hollingsworth further represented that it was such a favorable investment, he had purchased lots in the subdivision. Hollingsworth "offered to take all necessary actions to complete BDM's investment."

Based on Hollingsworth's representations about the "particularly choice lots[,]" plaintiffs decided to purchase ten lots from the developer (the "Lennon Hills transaction"). On 5 December 2006, Plaintiff BDM signed a contract to purchase the lots for $850,000 and deposited $30,000 earnest money with closing attorney, Gary Lawrence ("Lawrence"), who was serving as an "impartial 'escrow agent' for the parties" to the transaction. At the time BDM signed the contract, the Lennon Hills plat map had not yet been recorded with the Brunswick County Register of Deeds.

During the Lennon Hill transaction, Hollingsworth assisted plaintiffs with securing financing, first through Cooperative Bank, and when that failed, through Wachovia Bank and Trust Company, Inc. Hollingsworth was also working with Defendant Edwin L. Burnett, III ("Burnett") and Defendant Daniel Hilla III ("Hilla"), shareholders of Lenhil Inc. and Lennon Hills, L.L.C. Hollingsworth had been preparing Burnett's tax returns, among other services, for over 20 years. Additionally, Hollingsworth was a W-2 employee of Viable Corp. ("Viable"), a North Carolina corporation of which Burnett is the sole shareholder. Viable paid Hollingsworth approximately $3000 per month for his services. According to Plaintiff, Burnett, a licensed real estate agent, "appointed himself BDM's agent in

the transaction and arranged for his half of the commission [$42,500] to be paid through Viable" to Hollingsworth  Further, Burnett "as BDM's agent arranged for [Lawrence] to represent BDM."

Lawrence drafted the restrictive covenants for Lennon Hills and the custom Homesite Purchase Agreement for signing.  Plaintiffs did not know about Lawrence's prior work for Lennon Hills, but claimed Burnett, "BDM's agent in the transaction, was aware of this relationship."

The contract for the Lennon Hills transaction, which was attached to each of plaintiffs' complaints:  listed the closing date for plaintiffs' purchase as 6 February 2007; listed Lawrence as the escrow agent for the transaction; included no promise by the developer to repurchase the lots ; and listed Lenhil, Inc. as seller.  King gave the earnest money check to Hollingsworth at "First Citizens [Bank] in Porters Neck[.]"  In discussing a closing date with Hollingsworth, King indicated that his schedule would delay him coming to Brunswick County; Hollingsworth subsequently agreed to pick up the documents and meet to sign them.

Lawrence acted as the closing agent on the Lennon Hills transaction, preparing all the documents for the closing on behalf of plaintiffs, pursuant to the contract and the instructions of the lender.  He "treated [the closing] as a 'mail away' closing . . . [a] common practice in Brunswick County for real estate transactions . . . ."

King's deposition indicates he was aware at the date of closing that Lawrence was the closing attorney. King also stated he did no due diligence investigation as to the viability of the developer, made no effort to contact Lawrence as to the developer or any loans needing to be paid off in connection to the closing, nor spoke to any attorneys of his choosing about the transaction.

On 23 February 2007, King received "a good faith estimate and a proposed HUD," which Lawrence had faxed to Lumina Mortgage broker Nick Frank, who then faxed the statement to King's bookkeeper. The good faith estimate, which was not prepared by Lawrence,[3] reflected the $850,000 purchase price for the ten lots, and listed a ten percent commission, split in two equal parts: $42,500 to Viable Corp., and $42,500 to Lawrence Sales & Marketing.

Lawrence Sales & Marketing is operated by Pam Lawrence, a real estate agent who is also Gary Lawrence's wife. Pam Lawrence and Burnett previously worked together in marketing and developing the Lennon Hills subdivision and other real estate ventures. During the development of Lennon Hills, Pam Lawrence asked Gary Lawrence to draft a form contract for sales, restrictive covenants, and bylaws for the future homeowners' association. Lawrence did so. Plaintiff asserts it did not know of Pam and Gary Lawrence's relationship.

---

[3] King's testimony did not reflect who did prepare the HUD, only that he did not "believe" it was prepared by Lawrence.

In his deposition, Lawrence explained that in performing the title search in order to close the loan, he found a prior mortgage from BB&T Bank to Lennon Hills, L.L.C. as well as a deed of trust on the entire development from Lennon Hills, L.L.C. to Lenhil Inc., which Lawrence knew were essentially duplicate entities. Lawrence asked Alton Lennon, Lennon Hills' attorney, to release all ten lots that Plaintiff was purchasing from the deed of trust; Lennon agreed to do so. Lawrence further stated Burnett, "apparently" as Plaintiff's agent, was aware of the Lawrence's marriage, the covenants for the development, and the homeowners' association bylaws.

The Lennon Hills transaction closed on 1 March 2007, when King met Hollingsworth in a parking lot and signed documents closing Plaintiff's purchase of the ten lots. King knew Lawrence was the closing attorney but had had no communications with Lawrence at that time. Lawrence did not attend the parking lot closing.

The closing documents included a Wachovia Bank closing statement and a final HUD settlement statement, prepared by Lawrence as the settlement agent, and signed by King. King also affirmed during his deposition that he "had seen a draft HUD a week or so earlier that indicated [Lawrence] was the closing attorney[.]" The statement, which was included as an exhibit to plaintiffs' complaints, lists a $42,500 commission payment each to Lawrence Sales & Marketing and Viable.

Hollingsworth's commission was concealed in the sales commission paid to other defendants.

As to the transaction, King admitted "BDM never reduced any binding repurchase agreement with the developers to writing," nor did plaintiffs perform any "due diligence investigation into the lot purchase" or "visit or look at the property before signing the homesite purchase agreement or closing the transaction." No documents included the promise by the seller to pay the first year's interest on the loan or to buy back the lots at a profit. King also admitted he "didn't pay any particular attention" to the entities receiving commission, nor did he raise questions with Hollingsworth about the commission for the transaction. At the closing, King gave Hollingsworth a check for $63,526.48 covering the remaining balance of the ten percent down payment and additional closing costs.

On 7 March 2007, Viable Corp. paid $42,500 to Hollingsworth; this payment was not disclosed to Lawrence. Hollingsworth did not disclose the transaction to Evans/Homeplace, and upon questioning by Evans, he "denied receiving the $42,500 commission."

By letter of 30 March 2007, Lawrence "sent correspondence to plaintiffs enclosing a General Warranty Deed." The mailing included deeds for the ten lots in the Lennon Hills subdivision. Lawrence performed no further representation, nor did he and King communicate directly until this litigation began.

B.    Procedural History

On 28 February 2011, plaintiffs filed the original complaint and issuance of summons against 29 defendants.  The complaint included 19 causes of action and a separately pled claim for punitive damages against all defendants.  On 16 March 2011, plaintiffs filed the First Amended Complaint against 29 defendants, with 19 causes of action and a claim for punitive damages against all defendants.  On 8 April 2011, the North Carolina Supreme Court designated the case a Complex Business Case, and assigned the case on 14 April 2011 to the Honorable James L. Gale, Special Superior Court Judge for Complex Business Cases.

Between April and November of 2011, defendants filed answers to the complaints, motions to strike, and numerous motions to dismiss.

On 18 January 2012, the trial court dismissed by order the following claims pursuant to motions to dismiss under N.C. Gen. Stat. § 1A-12(b)(6):   Legal Malpractice and Breach of Fiduciary Duty against Lawrence; Negligent Misrepresentation and Unfair and Deceptive Trade Practices against Lennon Hills Defendants;[4] and all claims against Evans/Homeplace Realty.

Claims not dismissed were subject to discovery.  After discovery concluded, the trial court heard oral arguments on 17 December 2013.  On 20 March 2014, the trial

---

[4] We refer to these appellees collectively as the "Lennon Hills Defendants," which includes Edwin L. Burnett, III ("Burnett"), Viable Corp., and Daniel Hilla ("Hilla").  These parties have also been referred to as Lenhil, Inc. or Lenhill and Lennon Hills, L.L.C.

court issued an order and opinion on six motions:[5] (1) Plaintiff's motion for summary judgment against Lennon Hills Defendants, which the court denied; (2) Plaintiff's motion for summary judgment against the Estate of Hollingsworth, which the court denied; (3) Defendant Judith Hollingsworth's, as Executrix of the Estate of Hollingsworth, motion for summary judgment on all claims, which the court granted in part and denied in part; (4) Lennon Hills Defendants' motion for summary judgment, which the court granted in part and denied in part; (5) Defendant Lawrence's motion for summary judgment, which the court granted; and (6) Plaintiff's motion to amend complaint and to rescind and/or amend pursuant to Rules 15 and 54(b), which the court granted in part and denied in part.

On 27 May 2014, the Lennon Hills Defendants filed a motion for summary judgment as to Plaintiff's claim for piercing the corporate veil. The trial court issued an order and opinion on 21 July 2014 explaining that after the 20 March 2014 order, the parties disagreed as to whether Plaintiff's claim for piercing the corporate veil survived that order. The court determined the claim remained and allowed the Lennon Hills Defendants to file a motion as to the claim. The court granted the motion as to Plaintiff's claim for piercing the corporate veil and dismissed the claim with prejudice, leaving no other claims against Defendants Burnett or Hilla.

---

[5] Though we itemize here the motions relevant to the trial court's order, not all are part of the issues on appeal.

On 17 October 2017, Plaintiff filed a Notice of Dismissal with Prejudice, dismissing its claims against Judith Hollingsworth individually and as Executrix of the Estate of Glenn Hollingsworth.

In an Opinion and Final Order filed 16 November 2017, the trial court dismissed Plaintiff's action by denying its motions for summary judgment as to all defendants, granting the defendants' cross-motions, and resolving all claims in the action. Accordingly, the court dismissed the following claims pursuant to defendants' motions for summary judgment: Constructive Fraud and Negligent Misrepresentation against Lawrence; Civil Conspiracy against all defendants; Aiding and Abetting Breach of Fiduciary Duty against all defendants; and Punitive Damages.

On 12 December 2017, Plaintiff filed a Notice of Appeal as to Judge Gale's 18 January 2012, 20 March 2014, 21 July 2014 interlocutory orders and 16 November 2017 Final Order and Opinion dismissing all remaining defendants.

## II. Jurisdiction

Judge Gale's orders of 18 January 2012, 20 March 2014, and 21 July 2014 were interlocutory; his Opinion and Final Order of 16 November 2017 is a final judgment. The North Carolina Supreme Court designated this a Complex Business Case on 8 April 2011. Because the designation was prior to 1 October 2014, this Court reviews the appeal pursuant to N.C. Gen. Stat. § 7A-27(b).

## III. Standards of Review

A.    Motion to Dismiss

"On appeal of a [Rule] 12(b)(6) motion to dismiss, this Court conducts a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Podrebarac v. Horack, Talley, Pharr, & Lowndes, P.A.*, 231 N.C. App. 70, 74, 752 S.E.2d 661, 663-64 (2013) (citation omitted). This Court views the allegations in the complaint in the light most favorable to the non-moving party. *Donovan v. Fiumara*, 114 N.C. App. 524, 526, 442 S.E.2d 572, 574 (1994); N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). This Court considers "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Harris v. NCNB Nat. Bank of North Carolina*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). Under North Carolina's notice pleading requirements, "[a] complaint is sufficient to withstand a motion to dismiss where no insurmountable bar to recovery on the claim alleged appears on the face of the complaint and where allegations contained therein are sufficient to give a defendant notice of the nature and basis of [a plaintiff's] claim so as to enable [them] to answer and prepare for trial." *McAllister v. Ha*, 347 N.C. 638, 641, 496 S.E.2d 577, 580 (1998) (citation omitted).

While this Court takes factual allegations in the complaint as true, *Hargett. v. Holland*, 337 N.C. 651, 653, 447 S.E.2d 784, 786 (1994) (citation omitted), we are

not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health and Human Svcs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005). In North Carolina, dismissal pursuant to Rule 12(b)(6) is appropriate when one of three conditions is satisfied:

> (1) when on its face the complaint reveals no law that supports plaintiff's claim; (2) when on its face the complaint reveals the absence of fact sufficient to make a good claim; and (3) when some fact disclosed in the complaint necessarily defeats plaintiff's claim.

*Johnson v. Bollinger*, 86 N.C. App. 1, 3, 356 S.E.2d 378, 380 (1987).

"A statute of limitations can be the basis for dismissal on a Rule 12(b)(6) motion if the face of the complaint discloses that plaintiff's claim is so barred." *Reunion Land Co. v. Village of Marvin*, 129 N.C. App. 249, 250, 497 S.E.2d 446, 447 (1998) (citation omitted). "Whether a statute of repose has run is a question of law." *Glens of Ironduff Prop. Owners Ass'n v. Daly*, 224 N.C. App. 217, 220, 735 S.E.2d 445, 447 (2012) (citation omitted). It is well settled that "[q]uestions of statutory interpretation are ultimately questions of law for the courts and are reviewed de novo." *In re Summons of Ernst & Young*, 363 N.C. 612, 616, 684 S.E.2d 151, 154 (2009) (citation omitted).

B.    Summary Judgment

Pursuant to Rule 56 of the North Carolina Rules of Civil Procedure, this Court reviews *de novo* a claim for a motion for summary judgment. *Stanback v. Stanback*,

297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979). Such review requires a two-part analysis of whether: the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that no genuine issue as to any material fact exists, and that the movant is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c); *Andresen v. Progress Energy, Inc.*, 204 N.C. App. 182, 184, 696 S.E.2d 159, 160-61 (2010). The moving party must demonstrate the absence of a triable issue: "(1) by showing that an essential element of the opposing party's claim is nonexistent; or (2) [by] demonstrating that the opposing party cannot produce evidence sufficient to support an essential element of the claim or overcome an affirmative defense which would work to bar [its] claim." *Wilhelm v. City of Fayetteville*, 121 N.C. App. 87, 89, 464 S.E.2d 299, 300 (1995) (citing *Roumillat v. Simplistic Enters., Inc.*, 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992)).

If the moving party is able to meet this burden, the non-moving party "must 'produce a forecast of evidence demonstrating that the [non-moving party] will be able to make out at least a prima facie case at trial.'" *Roumillat*, 331 N.C. at 63, 414 S.E.2d at 342 (quoting *Collingwood v. Gen. Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989)). This forecast "may not rest upon the mere allegations or denials of [a] pleading," N.C. R. Civ. P. 56(e), nor may it rest upon unsworn affidavits or other inadmissible materials, *see Rankin*, 210 N.C. App. at 218-22, 706 S.E.2d at 314-16 (affirming summary judgment where only inadmissible,

unauthenticated documents and no affidavits or sworn testimony were submitted in response to summary judgment motion).

## IV.  Analysis

A.    Claims against Lawrence

1.    Malpractice

On appeal, Plaintiff assigns error to the trial court for dismissing the legal malpractice claim against Lawrence because Plaintiff filed its claim within the four-year statute of repose.  In response, Lawrence argues the court correctly dismissed Plaintiff's "untimely" malpractice claim because Plaintiff is not entitled to the protection of the longer statute of repose.

This appeal presents the question of whether a claim for professional malpractice against an attorney for alleged malpractice is allowable under the four-year statute of repose contained in North Carolina's professional malpractice statute of limitations  when the claim is filed more than three years but within four years after the attorney's alleged malpractice.  *See* N.C. Gen. Stat. § 1-15(c) (2017).  Section 1-15(c) provides:

> Except where otherwise provided by statute, a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of occurrence of the last act of the defendant giving rise to the cause of action:  Provided whenever there is . . . economic or monetary loss . . . which originates under circumstances making the . . . loss . . . apparent to the claimant at the time of its origin, and the .

> . . loss . . . is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made:  Provided nothing herein shall be construed to reduce the statute of limitation in any such case below three years.  Provided further, that in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action[.]

*Id.*  The accrual of professional malpractice claims is delayed, then, until the last act of the representation at issue, at which time the statute of limitations begins to run. *Id.*  Thus, in  order to benefit from the four-year statute of repose under N.C. Gen. Stat. § 1-15(c), a plaintiff must show (1) an economic or monetary loss caused by the alleged malpractice, (2) which was not reasonably discoverable for at least two years after that date, and (3) commencing of its suit within one year of discovery.  *Bolton v. Crone*, 162 N.C. App. 171, 173, 589 S.E.2d 915, 916 (2004).

A defense under a statute of limitations or a statute of repose may be raised under a motion to dismiss if it appears on the face of the complaint that such a statute bars the claim.  *Hargett*, 337 N.C. at 653, 447 S.E.2d at 786.  "Unlike statutes of limitations, which run from the time a cause of action accrues, 'statutes of repose . . . create time limitations which are not measured from the date of injury . . . [but] often run from defendant's last act giving rise to the claim or from substantial completion of some service rendered by defendant.'"  *Id.* at 654, 447 S.E.2d at 787 (quoting *Trustees of Rowan Tech. v. Hammond Assoc.*, 313 N.C. 230, 234 n.3, 328 S.E.2d 274,

276-77 n.3 (1985)). If the time period in which a claim based on professional malpractice is not met, the plaintiff has no cause of action. *Id.* at 655, 447 S.E.2d at 787.

Here, the parties agree the last act in Lawrence's representation of Plaintiff was at the closing on 1 March 2007. Plaintiff filed suit on 28 February 2011, which was one day shy of four years from Lawrence's last date of representation. The question, then, is whether Plaintiff's claim is time barred by the statute of limitations or allowed pursuant to the statute of repose. Plaintiff's malpractice claim—whereby Plaintiff argues on appeal "Lawrence's entire representation . . . was fraught with unethical conduct"—is largely centered on a failure to disclose facts that were in the closing documents and the contract. Plaintiff signed the contract of sale prior to Lawrence's representation in the transaction. At the trial court, Plaintiff alleged Lawrence improperly served as escrow agent and closing attorney, but Plaintiff knew these facts prior to closing. During its 30(b)(6) deposition, Plaintiff admitted that the allegations that it did not know Lawrence was the escrow agent or its closing attorney until after the closing were false [King I Dep. 52:18-19, 53:2-17]; Plaintiff did not, however, withdraw those allegations. Plaintiff's complaint further alleged "Lawrence never disclosed to [Plaintiff] that he was disbursing $42,500.00 of the purchase price to . . . Viable, yet the complaint also alleged that the settlement statement Lawrence prepared "identified [a] commission payment . . . to Viable . . . in the amount of

$42,500.00." Thus, at the latest, Plaintiff knew that Lawrence was acting as its closing attorney when it received the preliminary closing statement on 23 February 2007, which included the ten percent commission, split in two equal parts: $42,500 to Viable Corp., and $42,500 to Lawrence Sales and Marketing.

In Plaintiff's three complaints, it alleges only that it did not discover its loss in its real estate investment until "long after the purchase was complete." On appeal, Plaintiff argues this was a "non-apparent injury" that was discovered "*long after* the purchase was complete[,]" and thus argues Plaintiff "was not injured *until King discovered* the misrepresentations and omissions made by Lawrence and other parties involved[,]" as set forth in the pleadings. (Emphasis added.) Plaintiff argues, further, it was the "deceptive nature" of Lawrence's acts that prevented King from discovering "underlying facts until *much later* and BDM filed suit within one year of that discovery." (Emphasis added.) Plaintiff did not identify its economic or monetary loss or explain why any alleged injury was not reasonably discoverable, nor did it provide a specific date of injury by which the court could measure the time frame in which the suit had to be commenced. *See Bolton*, 162 N.C. App. at 173, 589 S.E.2d at 916. In its brief, Plaintiff concedes it did not plead a date of discovery. Such vague arguments fail to meet the necessary elements set forth by N.C. Gen. Stat. § 1-15(c).

Both the contract and the settlement statement lead to legal conclusions that the statute of limitations as well as the statute of repose do not save Plaintiff's claims

against Lawrence for malpractice. The four-year statute of repose would not save Plaintiff's claim because Plaintiff failed to show that its alleged loss due to Lawrence's nondisclosure was one which should not have reasonably been discovered within two years of the closing. Later discovery of additional facts or greater damages does not delay accrual. The three-year statute of limitations had run from the time Plaintiff must have known that Lawrence was both closing and attorney escrow agent. Plaintiff's own allegations show that it should have reasonably discovered Lawrence's complained of actions no later than 1 March 2007.

Moreover, Lawrence filed a motion to dismiss all claims against him, arguing the statute of limitations as a defense because the claims "accrued no later than March 1, 2007[.]" Plaintiff's response to Lawrence's motion to dismiss neither raised the statute of repose nor argued why it applied. North Carolina law is well-settled that arguments "not raised at the trial level will not be entertained for the first time on appeal." *Bennett v. Hospice & Palliative Care Center of Alamance-Caswell*, 246 N.C. App. 191, 195, 783 S.E.2d 260, 263 n.1 (2016) (citing *Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjustment*, 354 N.C. 298, 309, 554 S.E.2d 634, 641 (2001)).

For these reasons, we affirm the trial court's dismissal of the legal malpractice claims against Lawrence.

2. Breach of Fiduciary Duty

Plaintiff next argues Lawrence breached his fiduciary duty to Plaintiff. In its complaint, Plaintiff alleged Lawrence "failed to act in good faith and with due regard to the interests of plaintiffs in keeping with his fiduciary duty" and alleged fraud and civil conspiracy, among other things, the "direct and proximate" of which caused injury that "induced" plaintiffs to purchase the lots. In its brief, Plaintiff argues Lawrence breached his fiduciary duty by "fail[ing] to disclose his marriage to Pam Lawrence" and Lawrence's "multiple conflicts of interest" resulting in "an ethical breach of the duty of loyalty" particularly arising from Lawrence's "long standing professional relationship" with the Lennon Hill Defendants.

Breach of fiduciary claims are subject to the statute of limitations found in N.C. Gen. Stat. § 1-52 (2017).

> The appropriate statute of limitations depends upon the theory of the wrong or the nature of the injury. Because claims arising out of the performance or failure to perform professional services based on negligence or breach of contract are in the nature of "malpractice" claims, they are governed by N.C. Gen. Stat. § 1-15(c). Fraud by an attorney, however, is not within the scope of "professional services" as that term is used in N.C. Gen. Stat. § 1-15(c), and thus cannot be "malpractice" within the meaning of that statute. If the claim is for fraud, which includes a deliberate breach of fiduciary obligation, the courts have generally applied the jurisdiction's fraud statute of limitations.

*Sharp v. Teague*, 113 N.C. App. 589, 592, 439 S.E.2d 792, 794 (1994) (citations and some internal quotation marks omitted).

Plaintiff's complaint put forth essentially the same facts for claims of negligence and for breach of fiduciary duty. In its brief, Plaintiff argues, and we agree, that the three year statute of limitations against Lawrence should apply to its "[a]llegations of a breach of fiduciary duty that do not rise to the level of constructive fraud." Plaintiff's claims for breach of fiduciary duty overlap its claims for legal malpractice; accordingly, for the same reasons the legal malpractice claims should be dismissed as time barred, so too should the claims for breach of fiduciary duty be dismissed.

We therefore affirm the trial court's dismissal of Plaintiff's claim for breach of fiduciary duty against Lawrence.

3.      Constructive Fraud

In its brief, Plaintiff states in its breach of fiduciary duty argument, "certain breaches of fiduciary duty based on fraud, such as [Lawrence's] failure to disclose his wife's commission and past work for Lennon Hills defendants, do not merge with the general claim of legal malpractice." In a separate argument, Plaintiff subsequently challenges the trial court's 20 March 2014 summary judgment order dismissing the constructive fraud claims against Lawrence. In its 18 January 2012 order, pursuant to motions to dismiss, the trial court dismissed all constructive fraud claims except against Hollingsworth. In its 20 March 2014 order, the trial court determined the following claims would not survive summary judgment: Plaintiff's "direct" claims of

fraud; fraud in the inducement; and negligent misrepresentation against Lawrence for failing to disclose his relationship with Lawrence Sales & Marketing, the prior legal work he performed for the Lennon Hills Defendants, and a deed of trust that did not affect BDM's title to the lots.

Plaintiff argues in its brief, "the claim [for constructive fraud] should not have been dismissed pursuant to summary judgment." Plaintiff's appellate argument, therefore, references a grant of summary judgment on different claims not addressed in its brief. Assuming without deciding Plaintiff properly raised constructive fraud on appeal,[6] the arguments center on Lawrence's fiduciary duty to Plaintiff in the Lennon Hills transaction, and Lawrence's failure to "disclose material facts that would have kept BDM from completing the land purchase, including but not limited to, the commission paid to Lawrence's wife, a possible benefit to Lawrence."

"Although the showing necessary to establish the existence of a breach of fiduciary duty and constructive fraud involves overlapping elements, the two claims are separate under North Carolina law." *Trillium Ridge Condo. Ass'n v. Trillium Links & Vill., LLC*, 236 N.C. App. 478, 502, 764 S.E.2d 203, 219 (2014) (citation omitted). To recover for constructive fraud, a plaintiff must establish the existence of circumstances:

> (1) which created the relation of trust and confidence, and

---

[6] "A claim of constructive fraud based upon a breach of fiduciary duty falls under the ten-year statute of limitations[.]" *NationsBank of N.C. v. Parker*, 140 N.C. App. 106, 113, 535 S.E.2d 597, 602 (2000).

(2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust[.]  Further, an essential element of constructive fraud is that defendants sought to benefit themselves in the transaction.  The primary difference between pleading a claim for constructive fraud and one for breach of fiduciary duty is the constructive fraud requirement that the defendant benefit himself.  In order to satisfy this requirement, Plaintiff's evidence must prove defendants sought to benefit themselves or to take advantage of the confidential relationship.

*Id.*, 764 S.E.2d at 219-20 (citations and internal quotations omitted) (alterations in

*Trillium*); s*ee also Collier v. Bryant*, 216 N.C. App. 419, 432, 719 S.E.2d 70, 81 (2011)

(explaining the presumption of constructive fraud if a superior party "obtains a

possible benefit" and the burden shifting to defendant to prove he acted in an "open,

fair and honest manner" so that no breach of fiduciary duty occurred).  As to claims

based in fraud, this Court has stated:

Material facts and circumstances constituting fraud must be [pled] in a complaint with particularity.  Mere generalities and conclusory allegations of fraud will not suffice.  This is so for both fraud and constructive fraud.  Constructive fraud rests upon the presumption arising from a breach of a fiduciary obligation.

*Id.* at 597, 439 S.E.2d at 796 (citations and internal quotation marks omitted).

Plaintiff argued the presumption of constructive fraud existed, since

Lawrence's wife received a commission, which was a possible benefit to Lawrence.

Facts support, however, Lawrence's fair handling of the transaction. The contract for

the sale of the transaction was signed prior to Lawrence's involvement as an escrow

agent. The deed of trust did not encumber Plaintiff's lots, and thus Lawrence was not obligated to disclose it. Plaintiff received clear title to its lots and notice of who received commissions, including Lawrence Sales & Marketing. Plaintiff did not contest the accuracy of the settlement statement. Lawrence completed the closing and disbursed funds appropriately as the escrow agent.

Here, the complaint does not meet the requirement of particularity with regard to fraud or constructive fraud and instead presents conclusory statements. Such claims merely repeat the reasons stated for the legal malpractice and breach of fiduciary duty claims. Because Plaintiff has offered no reason to reverse the dismissal of its constructive fraud claim, we affirm the trial court.

4. Negligent Misrepresentation

Next, Plaintiff argues the trial court erred in dismissing the negligent misrepresentation claims against Lawrence. Plaintiff argues further:

> BDM justifiably relied on several misrepresentations and/or omissions negligently made by Lawrence, including but not limited to . . . [h]is past work for Lennon Hills defendants . . . [h]is marriage to Pam Lawrence of Lawrence Sales & Marketing . . . [t]he 15 million Deed of Trust on the Property . . . [and] [t]he payment of $42,500 to Lawrence Sales & Marketing and to Viable, knowing Viable would "do something with the money."

"[N]egligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*,

322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988). Reliance is not justifiable for purposes of negligent misrepresentation if a plaintiff failed to make reasonable inquiry, had the opportunity to investigate, and could "have learned the true facts through reasonable diligence[,]" *Rountree v. Chowan County*, 796 S.E.2d 827, 832 (2-17) (2017).

Plaintiff argues Lawrence acknowledged "key omissions of fact that should have been disclosed to BDM, but improperly placing the impetus on BDM . . . to discover these matters." While Plaintiff raised the issue of justifiable reliance on multiple issues, as stated *supra*, Plaintiff argues in its brief only the deed of trust. King testified that had he known about the encumbrance on the lots from the deed of trust, he would not have consummated the transaction.

When questioned at his deposition whether he would have told plaintiffs about the $15 million deed of trust, Lawrence explained, "Not unless they had asked because I don't think that it made any difference." Lawrence was not involved in the Lennon Hills transaction until after the sales contract between Plaintiff and Lenhil, Inc. was fully executed. The trial court found Lawrence's "failure to disclose those facts [*i.e.*, his past legal work for the Lennon Hills Defendants, his wife's ownership of Lawrence Sales & Marketing, and the deed of trust] after the purchase contract was binding . . . did not cause BDM to purchase the lots." Lawrence secured a release of the deed of trust after closing; Plaintiff received clear title to the lots. Plaintiff has

raised no genuine issue of material fact to the contrary, and we therefore affirm the trial court's grant of summary judgment on Plaintiff's negligent misrepresentation claim.

5.    Civil Conspiracy

Plaintiff claims in its brief on appeal that "this case has, at its heart, an elaborate conspiracy of intentional obfuscation and unethical behavior." Citing to pattern jury instructions and to a federal District Court case finding a civil conspiracy claim sufficient to overcome a motion to dismiss, Plaintiff asks this Court to find its civil conspiracy claim was "improperly dismissed" at summary judgment. *See Bear Hollow LLC v. Moberk, LLC*, 2006 WL 1642126 (W.D.N.C. 5 June 2006). Lawrence argues Plaintiff's civil conspiracy claim must fail, where Plaintiff "put forward no evidence to support a civil conspiracy claim" against him, and that "mere suspicion or conjecture" is not enough for submission to a jury.

In North Carolina, in order to state a claim for civil conspiracy, a complaint must allege "(1) a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a result of that conspiracy." *State ex. rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 444, 666 S.E.2d 107, 115 (2008) (citing *Muse v. Morrison*, 234 N.C. 195, 198, 66 S.E.2d 783, 785 (1951)). "If a party makes this showing, all of the conspirators are jointly and severally liable for the act of any one of them done in furtherance of the

agreement." *Dalton v. Camp*, 138 N.C. App. 201, 213, 531 S.E.2d 258, 267 (2000), *rev'd in part on other grounds*, 353 N.C. 657 (2001) (citing *Fox v. Wilson*, 85 N.C. App. 292, 301, 354 S.E.2d 737, 743 (1987)).

Civil conspiracy is a dependent claim. *Toomer v. Garrett*, 155 N.C. App. 462, 483, 574 S.E.2d 76, 92 (2002). "Only where there is an underlying claim for unlawful conduct can a plaintiff state a claim for civil conspiracy by also alleging the agreement of two or more parties to carry out the conduct and injury resulting from that agreement." *Id.*, 574 S.E.2d at 92. In order to maintain a civil conspiracy claim, the underlying unlawful conduct need not be separately stated; this Court reviews all sections of a complaint as to allegations to support such a claim. *See Fox v. Wilson*, 85 N.C. App. 292, 301, 354 S.E.2d 737, 743 (1987) (explaining that recovery for a claim arising out of civil conspiracy "must be on the basis of sufficiently alleged wrongful overt acts"). "A party may prove an action for civil conspiracy by circumstantial evidence; however, sufficient evidence of the agreement must exist 'to create more than a suspicion or conjecture in order to justify submission of the issue to a jury.'" *Dalton*, 138 N.C. App. at 214, 531 S.E.2d at 267 (citing *Dickens v. Puryear*, 302 N.C. 437, 456, 276 S.E.2d 325, 337 (1981)).

Here, in support of its civil conspiracy claim, Plaintiff sets forth in its complaint numerous allegations against "[a]ll Defendants." Collectively, Plaintiff claims "[t]hrough their actions, misrepresentations and concealment of material facts and

conflicts of interest and improper relationships . . . defendants conspired and/or entered into an agreement to improperly entice plaintiffs into purchasing and financing 10 lots in the Lennon Hills subdivision."

Our review of Plaintiff's allegations reveals that Plaintiff has failed to allege any specific overt act in furtherance of the alleged conspiracy or a common agreement and objective between Lawrence and Plaintiff. Moreover, Plaintiff voluntarily dismissed with prejudice all claims against Judith T. Hollingsworth, individually and as Executrix of the Estate of Glenn Hollingsworth. Thus, claims against Hollingsworth no longer exist as the central figure in the alleged conspiracy.

King, in his deposition, alleged Lawrence knew Hollingsworth was secretly being paid to lead Plaintiff into the transaction. In its appellate brief, Plaintiff suggests there was evidence Lawrence knew about the payment from Viable to Hollingsworth, citing to Lawrence's deposition testimony that Lawrence knew "Viable would 'do something with the money'". Greater context of the quoted testimony reveals Lawrence had no knowledge of Viable's payment to Hollingsworth until after this lawsuit was filed. Lawrence testified in his deposition:

> [I] had no knowledge of who Glenn Hollingsworth was. I had no knowledge that he was a realtor . . . . I had no reason to suspect that he was being paid any sum of money. I paid at closing the two real estate agents I knew were involved . . . I paid $42,500 to Ed Burnett through his company, Viable. I have no idea what he did with that money.

Lawrence further testified:

> We were aware there were two agents involved and that they were splitting the commission. That is who we paid. We had no reason to believe that anybody else was going to get it. Now, I did have reason to believe Viable would do something with the money but I had no idea what . . . . I didn't know what Viable was going to do with its money. And I certainly had no idea that Glenn Hollingsworth was going to get any portion of it.

Plaintiff offers nothing to dispute that Lawrence had no knowledge of a secret payment. Other allegations regarding related "misrepresentations, conflicts of interest, hidden shared interest, conspiracies, banking violations, [and] appraisal violations" are likewise unsupported by anything more than suspicion or conjecture. Plaintiff's argument on appeal likewise mirrors the conclusory allegations set out in his complaint and fails to cite any specific facts in support of his claim for civil conspiracy.

We conclude, therefore, Plaintiff has not forecast enough evidence to present a genuine question of material fact as to conspiracy. Accordingly, the trial court properly entered summary judgment for Lawrence.

6.      Aiding and Abetting Breach of Fiduciary Duty

Plaintiff next claims the trial court erred in dismissing its aiding and abetting breach of fiduciary duty claims against Lawrence and the Lennon Hills Defendants. To suggest Lawrence aided and abetted Hollingsworth in his breach, Plaintiff cites to Lawrence's deposition, in which he stated he knew Viable would "do something" with the money.

As Plaintiff acknowledges in its brief, the North Carolina Supreme Court has not recognized a cause of action for aiding and abetting breach of fiduciary duty, nor do we recognize it here. *See Ehrenhaus v. Baker*, 216 N.C. App. 59, 89, 717 S.E.2d 9, 29 (2011) (stating "it is unclear whether such a cause of action exists in North Carolina," and "elect[ing] not to delve into whether such claim exists" in the context of a class action merger), *appeal dismissed and rev. denied by Ehrenhaus v. Baker*, 366 N.C. 420, 735 S.E.2d 332 (2012); *but see Blow v. Shaughnessy*, 88 N.C. App. 484, 490, 364 S.E.2d 444, 447 (1988) (using a federal law to recognize a state cause of action for aiding and abetting a breach of fiduciary duty in the context of securities law violations), *abrogated by Bottom v. Bailey*, 238 N.C. App. 202, 211, 767 S.E.2d 883, 889 (2014). We therefore affirm the trial court's grant of summary judgment as to Plaintiff's claim for aiding and abetting breach of fiduciary duty.

7.    Equitable Estoppel

As an "alternative" to its other arguments, Plaintiff argues on appeal that "all defendants should be equitably estopped from asserting defenses against the foregoing claims including but not limited to the statute of limitations." Plaintiff asserts in its brief that "through pleadings and discovery" it showed "defendants repeatedly and knowingly made false representations and concealed material facts related to the Lennon Hills transaction" in order to lead Plaintiff into the sale.

While Plaintiff's brief uses the terminology "all defendants," plaintiffs' complaint did not include Lawrence in the specific listing of defendants pertaining to the Equitable Estoppel claim. To any extent Plaintiff attempts to raise equitable estoppel against Lawrence on appeal, it is waived.

8.    Punitive Damages

Plaintiff claims on appeal it is "entitled to punitive damages in addition to rescission of the contract" for the Lennon Hills transaction. Plaintiff asserts it is entitled to "punish defendants" with such damages "based on defendants' constructive fraud and negligent misrepresentations." Thus, on appeal, Plaintiff does not mention any individual defendant when discussing punitive damages, including Lawrence.

Because no claims remained against Lawrence, the trial court granted summary judgment on Plaintiff's claim for punitive damages against Lawrence. By affirming the trial court as to all previously considered claims against Lawrence, we likewise affirm the trial court's grant of summary judgment as to this claim.

For the above reasons, we affirm the trial court's orders as to Defendant Gary Lawrence.

B.    Claims against Evans/Homeplace

Plaintiff next assigns error to the trial court for "dismissing all claims" against Evans/Homeplace. Other than a mere reference to "all claims," Plaintiff argues on

appeal, more specifically, pursuant to vicarious liability, *respondeat superior*, and negligent supervision claiming Evans/Homeplace "should be held liable for Hollingsworth's acts with respect to the Lennon Hills transaction."

Plaintiff's argument does not include that the trial court erred in its ruling pertaining to the statute of limitations. The trial court's order of 18 January 2012 discussed the statute of limitations as it pertained to other defendants, but did not specifically discuss whether plaintiffs' claims against Evans/Homeplace were time barred. As to the order, Evans/Homeplace had already been dismissed, prior to the court's discussion of the statute of limitations. For the same reason the trial court dismissed other defendants based on the statute of limitations, however, most of plaintiffs' claims against Evans/Homeplace were time barred. Further, the trial court's order noted plaintiffs' concession at oral argument and in the motion brief that claims for negligence, gross negligence, conversion, breach of contract, and the implied duty of good faith and fair dealing were time barred. *See* N.C. Gen. Stat. § 1-52(9) and (16) (2017.)

Plaintiff also alleged joint venture and civil conspiracy against Evans/Homeplace. Under these claims, which are not separate causes of action, the conduct of one member of the joint venture or conspiracy is imposed upon another member of the joint venture or conspiracy. *See e.g.*, *Sellers v. Morton,* 191 N.C. App. 75, 83, 661 S.E.2d 915, 922; *Pike v. Wachovia Bank & Trust Co.*, 274 N.C. 1, 10-11,

161 S.E.2d 453, 461 (1968). Thus, the statute of limitations for the underlying claims govern the claims for the joint venture or conspiracy. Other than the Chapter 75 claim, joint venture and civil conspiracy claims are also barred by the three-year statute of limitations. Accordingly, actions giving rise to Plaintiff's claims for negligence occurred during or before the parking lot closing on 1 March 2007 and are time barred.

### 1.    Vicarious Liability

Even if Plaintiff's negligence claims were not time barred by the statute of limitations, Plaintiff's argument that Evans/Homeplace is vicariously liable for Hollingsworth's actions fails. The doctrine of *respondeat superior* imposes liability on an employer for damages caused by the negligent acts of an employee. *Estes v. Comstock Homebuilding Cos., Inc.*, 195 N.C. App. 536, 540, 673 S.E.2d 399, 402, *disc. review denied*, 363 N.C. 373, 678 S.E.2d 238 (2009). Conversely, liability is not imposed on an employer when an employee "engaged in some private matter of his own or outside the legitimate scope of his employment[.]" *Van Landingham v. Singer Sewing Machine Co.*, 207 N.C. 355, 357, 177 S.E. 126, 127 (1934). "It is only when the relation of master and servant between the wrongdoer and his employer exists at the time and in respect to the very transaction out of which the injury arose that liability therefor attaches to the employer." *Tomlinson v. Sharpe*, 226 N.C. 177, 179, 37 S.E.2d 498, 500 (1946). Generally, "a principal will be liable for its agent's

wrongful acts under the doctrine of *respondeat superior* when the agent's act (1) is expressly authorized by the principal; (2) is committed within the scope of the agent's employment and in furtherance of the principal's business; or (3) is ratified by the principal." *White v. Consolidated Planning, Inc.*, 166 N.C. App. 283, 296, 603 S.E.2d 147, 157 (2004) (citing *B. B. Walker Co. v. Burns Int'l Sec. Servs., Inc.*, 108 N.C. App. 562, 565, 424 S.E.2d 172, 174, *disc. review denied*, 333 N.C. 536, 429 S.E.2d 552 (1993)).

In *White v. Consolidated Planning, Inc.*, this Court set forth the following key points for assessing vicarious liability:

> (1) "A principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit fraud upon third persons is subject to liability to such third persons for fraud[;]" and (2) the critical question[s] [are] whether the tort was committed in the course of activities that the employee was authorized to perform[;] [whether] the [fraud] occurred as part of the very tasks that the employer had given the employee authority to perform[;] and [whether] [the defendant] had selected and employed [the employee] specifically to perform the functions that he exploited to accomplish his fraud and theft.

166 N.C. App. 283, 298-99, 603 S.E.2d 147, 158-59 (2004) (citation omitted).

Plaintiff contends it pled sufficient facts to support its claim. In its Second Amended Complaint, Plaintiff asserted Hollingsworth was "under the direct supervision and control" of Evans/Homeplace, and as such, Evans/Homeplace was required "to supervise, oversee, and control Defendant Hollingsworth in all matters

relating to real estate dealings." Plaintiff also asserted Evans/Homeplace was "liable for defendants [sic] Hollingsworth's misrepresentations pursuant to the doctrine of respondeat superior given that all of those misrepresentations were made by Hollingsworth when he was acting under the direct supervision and control of the Exit defendants and for the benefit of Exit," and further, that Exit defendants benefited from and "ratified" Hollingsworth's actions. In its brief, Plaintiff asserts that by Evans/Homeplace training and sending forth Hollingsworth as an agent, this "enabled" Hollingsworth's misdeeds, and further, that Evans/Homeplace "ratified" Hollingsworth's acts by accepting the listings of 200 Lennon Hills properties.

Evans/Homeplace contends it cannot be held vicariously liable for the intentional conduct of Hollingsworth, and further, that they "were strangers to the events from which BDM's claims arise." In North Carolina, intentional torts are "rarely" considered to be in the scope of an employee's employment. *White* at 296, 603 S.E.2d at 157 (citation omitted). "Nevertheless, 'rarely' does not mean 'never.'" *Id.*, 603 S.E.2d at 157 (citing *Borneman v. United States*, 213 F.3d 819, 827 (4th Cir. 2000), *cert. denied*, 531 U.S. 1070 (2001)).

Effectively refuting its own contentions, Plaintiffs' Second Amended Complaint asserts that King had a "close fiduciary relationship" with Hollingsworth, King and Hollingsworth "regularly discussed . . . both personal and business financial matters," and Hollingsworth told King that he "would still be serving his clients' financial

interests by including select clients in favorable investment opportunities." The Lennon Hills purchase was presented as an "extremely favorable investment" opportunity. King asserted he "reli[ed] on the fiduciary relationship" in Hollingsworth's selection of the lots, and plaintiffs "believed that Hollingsworth would be acting in plaintiffs' best financial interest" in selecting the lots. The past agency relationship was based in financial advice.

Plaintiffs' Second Amended Complaint goes on to state "Hollingsworth misrepresented to plaintiffs, by his silence, that Viable corporation was a realtor that had performed actual real estate sales services entitling it to a split of the sales commission when . . . Viable was in reality a mere straw man for Hollingsworth who was actually receiving a hidden commission[.]" Alternatively, plaintiffs' complaint asserts "Viable was in reality a front name used by" the Lennon Hills Defendants to obtain "funds necessary to pay the first year's interest on the Wachovia loan[.]" Plaintiffs' complaint further assert "Hollingsworth misrepresented to plaintiffs that the Exit Realty defendants were monitoring his activities, and that Hollingsworth was doing all that was required of him as a realtor-sponsored holder of a new real estate license, when in truth the Exit Realty defendants, including defendant J. Martin Evans, were *not overseeing anything* Hollingsworth was doing, including the transaction involving plaintiffs[.]" (Emphasis added.) Plaintiffs assert "Hollingsworth misrepresented to plaintiffs, by his silence, the truth of his *failure to*

*inform* the Exit Realty defendants—Hollingsworth's alleged sponsor and overseer—of the $42,500 commission Hollingsworth earned on the sale of the lots to plaintiffs[.]" (Emphasis added.)

As to a conspiracy, plaintiffs complaint explains that various parties conspired with each other to conceal material facts, conflicts of interest, and improper relationships pertaining to the purchase of the Lennon Hills property. To effect the conspiracy, "all defendants agreed that Hollingsworth would refrain from telling his realty sponsor [Evans/Homeplace] about the sale of the lots to the plaintiffs so that Hollingsworth's 'financial advisor' status could be maintained in the eyes of the plaintiffs and further that the defendants could receive as much money as possible in fees and commissions." In its brief, Plaintiff argues Burnett, a real estate agent, "appointed himself BDM's agent in the transaction and arranged for his half of the commission to be paid through Viable in order to conceal the payment to Hollingsworth."

Plaintiff's allegations regarding this secretive behavior directly counter any allegations that Evans/Homeplace knew or had reason to know of Hollingsworth's misdeeds. Evans/Homeplace's testimony also supports the notion it was unaware of Hollingsworth's involvement in or payment for the transaction at issue. Hollingsworth concealed from Evans/Homeplace his business relationship with Plaintiff. Because Evans/Homeplace was unaware, there was no "relation of master

and servant" between Evans/Homeplace and Hollingsworth. *See Tomlinson*, 226 N.C. at 179, 37 S.E.2d at 500. As to this transaction, Plaintiff alleged insufficient facts to support that Evans/Homeplace "expressly authorized" Hollingsworth's actions, that his actions were in the "scope" of his employment, or that Evans/Homeplace "ratified" Hollingsworth's actions. *See White*, 166 N.C. App. at 296, 603 S.E.2d at 157. Plaintiff's allegations support, instead, that Hollingsworth was "engaged in some private matter of his own," and his actions were clearly "outside the legitimate scope of his employment." *See Van Landingham*, 207 N.C. at 357, 177 S.E. at 127. In sum, Plaintiff failed to state a claim upon which relief may be granted.

2.      Plaintiff's Derivative Claims, *Respondeat Superior*

In North Carolina

> A dismissal taken with prejudice indicates a disposition on the merits which preclude litigation to the same extent as if the action had been prosecuted to a final adjudication. It is well settled in this State that a voluntary dismissal with prejudice is a final judgment on the merits. It is further well settled law that dismissal with prejudice, unless the court has made some other provision, is subject to the usual rules of res judicata and is effective not only on the immediate parties but also on their privies.

*Barnes v. McGee*, 21 N.C. App. 287, 289, 204 S.E.2d 203, 205 (1974) (quotations and citations omitted).

Here, Plaintiff settled with Hollingsworth through his estate. Plaintiff provided the Notice of Dismissal with Prejudice on 17 October 2017. Under North

Carolina law, such dismissal is a judgment on the merits as to the alleged employee, which precludes further action against the employer as to derivative liability. *See Wrenn v. Maria Parham Hosp., Inc.*, 135 N.C. App. 672, 681, 522 S.E.2d 789, 794 (1999) (affirming summary judgment to employer hospital where employee physician was voluntarily dismissed with prejudice); *Graham v. Hardee's Food Systems*, 121 N.C. App. 382, 385, 465 S.E.2d 558, 560 (1996) (finding claims against principal must fail where claims against agent failed). Plaintiff's dismissal of Hollingsworth with prejudice operates as an adjudication on the merits in favor of Evans/Homeplace. *See Barnes*, 21 N.C. App. at 289, 204 S.E.2d at 205. Accordingly, Plaintiff's derivative claims against Evans/Homeplace on the basis of *respondeat superior* are barred. *See id.*, 204 S.E.2d at 205.

3.      Evans/Homeplace, *Res Judicata* Claims

Evans/Homeplace asserts the right as an appellee to present issues on appeal to provide an alternative basis supporting the trial court's judgment. N.C.R. App. P. 28(c). Evans/Homeplace argues that even if the trial court erred in its order of 18 January 2012, Plaintiff's dismissal of the Estate of Hollingsworth on 17 October 2017 "operates as an adjudication on the merits of potential claims against Hollingsworth[,]" and thus Plaintiff's "claims against Evans/Homeplace on the basis of *respondeat superior* are barred by *res judicata*."

Because we affirm the trial court, we need not address Evans/Homeplace's *res judicata* claims. For the above reasons, we affirm the trial court's dismissal of all claims against Evans/Homeplace.

C.     Claims against Lennon Hill Defendants

1.     Negligent Misrepresentation

Plaintiff assigns error to the trial court for dismissing the negligent misrepresentation claim against the Lennon Hills Defendants. Plaintiff asserts the Lennon Hills Defendants, "through their manipulation and concealment of material facts committed negligent misrepresentation in breach of the fiduciary duty of good faith and fair dealing implicit in their contractual relationship" for the transaction of the sale of the lots. This argument is without support in the record.

"The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988).

To support its claims, Plaintiff refers in its brief to five paragraphs in the Second Amended Complaint. Nothing in the pleadings reflect that the Lennon Hills Defendants negligently prepared information for Plaintiff. The first referenced section in the complaint states: "The defendants reasonably calculated that the misrepresentations and concealed material facts would deceive plaintiffs and

defendants desired and expected that plaintiffs would reasonably rely on the misrepresentations and undisclosed material facts." The sections continue, "defendants recklessly made misrepresentations," "recklessly concealed material facts and conflicts of interest and improper relationships," and that "plaintiffs justifiably relied upon and acted upon" such misrepresentations and undisclosed facts. Plaintiffs complained had they known the truth, they would not have purchased the lots; plaintiffs further claimed damages as to the "numerous fraudulent misrepresentations" that caused their injury. Lacking from the complaint is any specific information that defendants, particularly the Lennon Hills Defendants, negligently supplied information with respect to the transaction. Plaintiff's brief is likewise filled with generalities and conclusory statements. It states Burnett and Hilla "withheld and manipulated material facts"; Viable, "as BDM's agent, breached its separate fiduciary duty in perpetrating the same negligent misrepresentations"; and Lennon Hills Defendants "failed to disclose" the commission payment and that they had a long-standing relationship with Hollingsworth. Plaintiff also fails to show it justifiably relied on any such negligently prepared or omitted information. *See Raritan River Steel Co.*, 322 N.C. at 206, 367 S.E.2d at 612.

Plaintiff has not sufficiently pled a claim for negligent misrepresentation, and we thus affirm the trial court's dismissal of the claim.

2. Unfair and Deceptive Trade Practices

Plaintiff next assigns error to the trial court for dismissing the unfair and deceptive trade practices claims against the Lennon Hills Defendants. Plaintiff claims that Burnett/Viable's failure to "disclose their dual agency as agent and seller and thereafter obtain[ing] BDM's consent to [the] relationship" was "per se unfair and deceptive."

A claim for Unfair and Deceptive Trade Practices requires a plaintiff to allege: "(1) an unfair and deceptive act or practice; (2) in or affecting commerce; and (3) which proximately causes actual injury[.]." *Poor v. Hill*, 138 N.C. App. 19, 27, 530 S.E.2d 838, 844 (2000). When an allegation of unfair and deceptive trade practices is based on alleged misrepresentation, a plaintiff must show actual reliance on the alleged misrepresentation. *Id.*, 530 S.E.2d at 844. To prevail under Chapter 75, a plaintiff must show that he detrimentally relied upon a statement or misrepresentation, and that he suffered actual injury as a proximate result. *Forbes v. Par Ten Group, Inc.*, 99 N.C. App. 587, 601, 394 S.E.2d 643, 651 (1999), *cert. denied*, 99 N.C. 587, 402 S.E.2d 824 (1991).

For its argument, Plaintiff relies on North Carolina Real Estate Commission regulation Chapter 93A-6(a)(1), which allows the Commission to take action against a broker for "making any willful or negligent misrepresentation or any willful or negligent omission of material fact." Citing to two paragraphs in its Second Amended Complaint, Plaintiff asserts it "[pled] facts sufficient" to make its claim against the

Lennon Hills Defendants. The cause of action as stated in the complaint was against "[A]ll Defendants Except for Gary Lawrence." The first referenced paragraph states "All of the actions of the defendants relating to misrepresenting and failing to disclose material facts and conflicts of interest as set forth . . . constitute unfair and deceptive trade practices[.]" The second referenced paragraph states, "The plaintiffs have been, and will continue to be, directly and indirectly injured and damaged as a result of defendants' unfair trade practices that have harmed plaintiffs." The paragraph goes on to claim such practices were the proximate cause of plaintiffs' decision to purchase the lots. Lacking from the complaint is the pleading specificity required as to what statement or misrepresentation the Lennon Hills Defendants made, how Plaintiff relied to its detriment on such statement or misrepresentation, or how such statement or misrepresentation proximately caused an injury to Plaintiff. *See Forbes v. Par Ten Group, Inc.*, 99 N.C. App. 587, 601, 394 S.E.2d 643, 651 (1999), *cert. denied*, 99 N.C. 587, 402 S.E.2d 824 (1991).

Based on the above, we affirm the trial court's dismissal of Plaintiff's unfair and deceptive trade practices claim against the Lennon Hills Defendants.

3.    Civil Conspiracy

We reference the Plaintiff's allegations against "[a]ll Defendants" and law set forth *supra* regarding claims for civil conspiracy. Our review of Plaintiff's allegations reveals that Plaintiff has failed to allege any specific overt act in furtherance of the

alleged conspiracy or common agreement and objective between the Lennon Hills Defendants and the other defendants. As discussed, by dismissing Hollingsworth's Estate and its representative, claims against the central figure no long exist.

On appeal Plaintiff asserts Burnett and Viable Corp. created an agency relationship with Plaintiff by acting as Plaintiff's agent for the closing. Plaintiff alleges the Lennon Hills Defendants entered into an agreement with the specific purpose of "negligently misrepresent[ing] certain facts regarding the sale of Lennon Hills [property], as well as engaging in unfair and deceptive trade practices." [P. Br. 39] Plaintiff also alleges Burnett and Lawrence falsified the HUD statement showing the sale of the Lennon Hills property, and that the Lennon Hills Defendants concealed the nature of Hollingsworth's involvement in the Lennon Hills sales transactions.

Acting as an agent for and effectuating a land deal closing is not unlawful. Nothing in the record supports that Burnett and Viable's working together was part of a master plan. Plaintiff has not provided any evidence beyond a suspicion or conjecture, *see Dalton*, 138 N.C. App. at 214, 531 S.E.2d at 267, that the Lennon Hills Defendants entered into an agreement to defraud Plaintiff or to accomplish any unlawful purpose or lawful purpose by unlawful means. *See Toomer*, 155 N.C. App. at 483, 574 S.E.2d at 92 (2002). We thus affirm the trial court's grant of summary judgment on this claim.

4.      Aiding and Abetting Breach of Fiduciary Duty

For reasons set forth *supra*, we do not recognize here a claim for aiding and abetting breach of fiduciary duty. We thus affirm the trial court's grant of summary judgment on this claim.

5.      Punitive Damages

Plaintiff asserted a punitive damages claim against Hollingsworth and the Lennon Hills Defendants for constructive fraud, among other things. As discussed *supra*, a claim for punitive damages is not an independent claim; rather, punitive damages must only be awarded if a defendant is liable for compensatory damages related to fraud, malice, or willful or wanton conduct. *See* N.C. Gen. Stat. § 1D-15(a) (2017).

Claims for fraud are "subject to more exacting pleading requirements than are generally demanded by our liberal rules of notice pleading." *Chesapeake Microfilm, Inc. v. Eastern Microfilm Sales & Serv., Inc.*, 91 N.C. App. 539, 542, 372 S.E.2d 901, 903 (1988). Further, such claims require time, place, and content of conversation. *Id.*, 372 S.E.2d at 903.

In its February 2012 order, the trial court found Plaintiff failed to allege in its Second Amended Complaint the "time, place and content of the [alleged] fraudulent representations [Plaintiff] claimed were made by [the Lennon Hills Defendants]." The trial court found the Second Amended Complaint deficient because it did not

include specific references to the time, place, and content of the alleged fraudulent representations made by the Lennon Hills Defendants. Without showing there was information exchanged between Plaintiff and the Lennon Hills Defendants, and without showing how Plaintiff justifiably relied on such information, there is no showing of fraud. Plaintiff also did not assert allegations of malice, or willful or wanton conduct. *See* N.C. Gen. Stat. § 1D-15(a).

Like the trial court, we see nothing in the record to indicate Plaintiff produced evidence from which a reasonable jury could conclude that clear and convincing evidence exists that an officer, director, or manager of Viable, Lenhil, Inc, or Lennon Hills, L.L.C. participated in or condoned any of the potentially fraudulent, malicious, or willful and wanton conduct of Hollingsworth. We affirm the trial court's dismissal of any and all claims against the Lennon Hills Defendants for constructive fraud and denial of punitive damages.

6. Equitable Estoppel

Plaintiff on appeal suggests that "*all* defendants should be equitably estopped." Plaintiff, however, provides no specific references to the record supporting its assertions that the Lennon Hills Defendants concealed material facts or made false representations. Plaintiff also provides no support for alleging it had no means of knowledge of certain facts. The public record, discussed *supra*, provided most of the facts that were allegedly uncovered after the close of the Lennon Hills sale.

We therefore affirm the trial court's dismissal of the equitable estoppel claims against the Lennon Hills Defendants.

6.      Plaintiff's Motion for Summary Judgment

Plaintiff also assesses error to the trial court for denying its motion for summary judgment with respect to the claims of civil conspiracy and aiding and abetting breach of fiduciary duty against the Lennon Hills Defendants.  In support of its claim, Plaintiff asserts on appeal:  (1) "Burnett and Hollingsworth entered a secret agreement that Hollingsworth would be paid half of the commission on the Lennon Hills . . . transaction[]'" (2) Hollingsworth held a real estate license at the time of the transaction; (3) "Burnett appointed himself/Viable as BDM's agent for purposes of the transaction"; (4) the HUD statement "violated Chapter 93A disclosure requirements"; and (5) Plaintiff "would not have entered the Lennon Hills transaction had they been aware of the agreement between Burnett and Hollingsworth."

In its March 2014 order, the trial court concluded there are genuine issues of material fact as to these claims because Plaintiff failed to prove Hollingsworth served as Plaintiff's agent in the transaction and whether he served as Viable, Lenhil, or Lennon Hills, L.L.C.'s agent in the transaction.  This was grounded in the fact that the dual agency relationship was central to Plaintiff's case.

While Burnett told Hollingsworth he would "take care" of him if Hollingsworth brought buyers for the development, nothing in the record establishes employment of

Hollingsworth, or that Hollingsworth was an agent of Burnett, Viable Corp., or any other defendant. Lacking an agency relationship between Hollingsworth and other defendants, there is no conspiracy. As addressed *supra*, there is no recognized claim for aiding and abetting breach of fiduciary duty under North Carolina law.

We thus affirm the trial court's denial of Plaintiff's motion for summary judgment on the claims of civil conspiracy and aiding and abetting breach of fiduciary duty.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's orders as to Lawrence, Evans/Homeplace, and the Lennon Hills Defendants.

AFFIRMED.

Judges DAVIS and BERGER concur.